UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| RUTH GARLACH, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:06-CV-502 CAN |
| | ) | |
| CALVIN SENTERS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

On March 23, 2007, Defendants Calvin Senters and First Fleet Inc. (collectively "Senters") filed a motion for summary judgment. On that same day, Plaintiffs Ruth and Jerrone Garlach (collectively "Garlach") filed their response and Senters filed his reply. For the following reasons, Senter's motion for summary judgment is **DENIED** [Doc. No. 16].

### I.   PROCEDURE

On July 28, 2007, Garlach filed her complaint in state court. Senters subsequently removed this case to this Court on August 15, 2006. On September 12, 2006, the case was reassigned to the undersigned based upon the consent of the parties.

On March 23, 2007, Senters filed a motion for summary judgement. On that same day, Senters also filed a Fed. R. Civ. P. 56 motion to strike the testimony of Gary Cooper (Cooper), who is Garlach's expert.

By April 10, 2007, all pending motions were ripe for this Court's review. This Court may rule upon these motion pursuant to the parties' consent and 28 U.S.C. § 636(c)(1). As a preliminary matter, this Court must resolve whether Cooper is an appropriate expert before considering Senter's motion for summary judgment.

A Senter's Motion to Exclude

This case involves a collision between Garlach's minivan and Senter's semi truck at the intersection of two highways. Cooper performs traffic accident reconstruction, and he examined the traffic accident that is the topic of this case (Def.'s Ex. A, Mot. Strike, Dep. Gary Cooper, 3). First, Cooper read through the accident report and any relevant depositions (Id.). Then, he visited and examined the site of the collision, took electronic measurements with a total station, and took photographs (Id. 3-4). After Cooper had gathered this data, he diagramed the crash cite and the vehicles involved (Id. 4). Next, Cooper performed calculations to determine time distance relationship and impact (Id.). To determine the time distance of the truck, Cooper used some data generated by the VORAD system on Senter's truck.[1] The VORAD system generates a radar based chart that indicates the speed of certain objects at a particular time, including the host object (Id. 4,9). Cooper used the VORAD data to determine the starting speed of Senter's truck as 50 m.p.h. (Id. 5). In Cooper's opinion, he believes that Senter's truck was exceeding 40 m.p.h. at the time of collision in the intersection, and he even opines that he believes Senters was traveling at 50 m.p.h. at the time of the collision. Senters seeks to strike this opinion as unreliable.

Fed. R. Evid. 702 states as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient

---

[1]The VORAD system is a computerized collision warning system that uses radar to monitor vehicles around it. The VORAD system uses radar signals to determine the distance and speed between the host vehicle and objects in front of it. The VORAD system then alerts the driver of potentially dangerous situations (P's Ex. 1 Part 5, 5).

>facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

F.R.E. 702 requires that a district court examine whether 1) the expert will testify to valid scientific knowledge, and 2) whether that testimony will assist the trier of fact in understanding or determining a fact in issue.  Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 592 (1993); Smith v. Ford Motor Co., 215 F.3d 713, 718 (7th Cir. 2000) (holding that "the district court must consider whether the testimony will assist the trier of fact with its analysis of any of the issues involved in the case").  Hence, a district court acts as a "gatekeeper" to ensure that any and all expert testimony or evidence admitted is not only relevant but reliable.  Ramsey v. Consol. Rail Corp. 111 F. Supp. 2d 1030, 1036 (N.D. Ind. 2000).  However, it is not the responsibility of the trial court to determine whether the expert's opinion is correct.  Smith, 215 F.3d at 719.  The factual underpinnings of the analysis and the correctness of the conclusions are matters to be determined by the trier of fact.  Id. at 718.

In Kumho Tire Co. v. Carmichael, 526 U.S. 137, 149 (1999), the Supreme Court held that this inquiry must be taken in all matters relating to expert testimony and not only in those that contain scientific testimony.  Fed. R. Evid. 702 has liberalized the standard for qualifying as an expert witness.  Wilson v. City of Chi., 6 F.3d 1233, 1238 (7th Cir. 1993).  A witness does not need to put forth testimony in a scientific or technical manner to be considered an expert. Tuf Racing Products, Inc. v. Am. Suzuki Motor Corp., 223 F.3d 585, 591 (7th Cir. 2000). Experts can be qualified to testify based upon personal experience and knowledge, so long as the experience and knowledge is reliable.  Kumho Tire, 526 U.S. at 150; Smith, 215 F.3d at 718; Tuf Racing, 223 F.3d at 591.

3

Courts must determine whether the expert is qualified in the relevant field and whether the methodology underlying the expert's conclusion is reliable.  See Ammons v. Aramark Uniform Serv., Inc., 368 F.3d 809, 816 (7th Cir. 2004).  A court should examine the full range of practical experience and technical training, as well as examine the methodology used in reaching a conclusion when deciding whether an expert is qualified to testify.  Smith, 215 F.3d at 718.  However, offering only a bottom line conclusion does not assist the trier of fact and should not be admitted.  Zenith Elec.s Corp. v. WH-TV Broadcasting Corp. 395 F.3d 416, 420 (7th Cir. 2005); Lennon v. Norfolk & W. Ry. Co., 123 F.Supp.2d 1143, 1147 (N.D. Ind. 2000).

There is no question that Cooper has extensive knowledge, skill, experience, or education to satisfy F.R.E. 702.  Cooper has an associate's degree in mechanical engineering technology and a bachelor's degree in mechanical engineering from Purdue University (Def.'s Ex. A, Mot. Strike, 3).  He has consulted as a traffic accident reconstructionist for over 20 years (P's Ex. 1, Resp. to Summ. J., Part 5.).  He also has a history of lecturing and teaching in the area of traffic crash investigation and a number of professional affiliations (Id.).  Cooper's extensive experience, education, and recognition in the area of traffic reconstruction is extensive and sufficient to satisfy F.R.E. 702. U.S. v. Conn., 297 F.3d 548, 555 (7th Cir. 2002).

Also, it appears Cooper has used reliable principles and methods in forming his opinion.  If Cooper's opinion regarding the reconstruction of the accident was based only on his experience and judgment, then his opinion would be a 'bottom line' prohibited by Zenith Elec.s Corp., 395 F.3d at 419-20.  However, Cooper performed an investigation.  He visited the accident scene and took measurements.  He used formulaic mathematical formulas to reach some

4

of his conclusions. Cooper has shown that his theory is subject to, indeed the product of, extensive testing. This Court cannot say Cooper used unreliable principles or methods.[2]

Senters only argues that Cooper's opinion is unreliable because he used data from the VORAD system, has no understanding of the VORAD system, and has no experience with the VORAD system. The method or process used by Cooper included gathering an abundance of data and then applying that data to mathematical formulas. The problem with Senter's argument is that it attempts to truncate and isolate Cooper's opinion and the process he used. Cooper merely obtained some of the data he needed to reach his opinion from the VORAD system.[3] The VORAD system is not, as Senters suggests, the entire basis for Cooper's opinion or the entire process used for forming his opinion. Senters, in essence, is attacking part of the factual underpinnings that Cooper used to formulate his opinion. Specifically, Senters is attacking the accuracy of the data Cooper derived from the VORAD system. Rather than excluding Cooper's opinion, Senter's concerns of Cooper's understanding of and experience with the VORAD system are more appropriate for cross examination. Walker v. Soo Line R.R., 208 F.3d 581, 591 (7th Cir. 2000) (indicating that failure to consider evidence or flaws in an investigation are for cross examination).

---

[2] While it is true that neither Garlach or Cooper has indicated that the process he used is the subject of literature, proof of a method or process being subject to literature is but one non-exclusive factor to consider. See Chapman v. Maytag Corp., 297 F.3d 682, 688 (7th Cir. 2002). Thus, the absence of literature on Cooper's method or process is not dispositive.

[3] Specifically, Cooper used the VORAD system to determine the starting velocity of Senter's semi-truck (Def.'s Ex. A, 5). All of the data he compiled, including the VORAD system reading, was needed for him to reach his conclusion that Senter was traveling at 50 m.p.h. at the time of impact.

In summary, because Cooper satisfies F.R.E. 702, Senter's motion to strike is **DENIED**. This Court must next determine whether it is appropriate to enter summary judgment.

**II.     ANALYSIS**

   A.     Facts

At the intersection of Indiana Highways 6 and 421, there are flashing lights above the intersection (Def.'s Ex. A, Mot. Summ. Judg., Dep. Officer Gary Biggs, 16).  Traffic traveling on Highway 6 has red flashing lights, which indicates to drivers that they must stop (Id.).  Traffic traveling on Highway 421 has a flashing yellow light, which indicates that approaching traffic should take caution but not necessarily reduce speed (Id.).

On September 12, 2004, Senters was traveling South on Indiana Highway 421 in his semi truck while Garlach was traveling west on Indiana Highway 6 in a mini van when the two collided (Def.'s Ex. C; Mot. Summ. Judg.; Def.'s Ex. D, Mot. Summ. Judg., 7).  All of the eye witnesses indicate that Garlach ran through the stop light (Id.).

The speed limit on Highway 421 was 40 m.p.h. (P's Ex. 1, 8).  With regards to Senter's semi truck, eye witnesses believed the semi was traveling 35 to 40 m.p.h. (Def.'s Ex. C, Mot. Summ. Judg.).  However, Garlach's accident reconstruction expert, Cooper, believes that Senter's semi truck was traveling faster than 40 m.p.h. (P's Ex.1, Pat 3, 4).  Specifically, Cooper opines as a matter of math and physics that Garlach's van would have traveled 18 feet farther across the intersection, preventing the crash, if Senter's semi was traveling at the speed limit of 40 m.p.h. (Id.).

   B.     Standard of Review

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Lawson v. CSX Transp., Inc., 245 F.3d 916, 922 (7th Cir. 2001).  In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the nonmoving party as well to draw all reasonable and justifiable inferences in favor of that party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); King v. Preferred Technical Group, 166 F.3d 887, 890 (7th Cir. 1999).  To overcome a motion for summary judgment, the non-moving party cannot rest on the mere allegations or denials contained in its pleadings.  Rather, the non-moving party must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial.  Celotex v. Catrett, 477 U.S. 317, 322-23 (1986);  Robin v. Espo Eng'g Corp., 200 F.3d 1081, 1088 (7th Cir. 2000).  Where a factual record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing Bank of Ariz. v. Cities Serv.s Co., 391 U.S. 253, 289 (1968)).

      C.      Senter's Motion for Summary Judgment

It is basic tort law that in a negligence case a plaintiff must establish four elements: 1) that the defendant owed the plaintiff a duty, 2) that the defendant breached its duty, 3) that the plaintiff suffered damages and 4) that the defendant's breach of its duty caused the plaintiff's damages.  Morgan v. Tackitt Ins. Agency, Inc., 852 N.E.2d 994, 998 (Ind. Ct. App. 2006); Musser v. Gen. Health Serv.s, 356 F.3d 751, 760 (7th Cir. 2004) (citing Whyde v. Czarkowski,

7

659 N.E.2d 625, 627 (Ind. Ct. App. 1995)).  Senters argues that he had no duty and committed no breach.

In Indiana a motorist has a duty to maintain a proper lookout, use due care to avoid a collision, and maintain his vehicle under reasonable control.  McDonald v. Lattire, 844 N.E.2d 206, 213 (Ind. Ct. App. 2006).  However, a motorist does not have a duty to use extraordinary care or look for extraordinary hazards on a highway regularly used by the public.  Id.  A motorist has a right to assume other motorists will also exercise reasonable care, and in particular, a preferred driver has the right to assume that a non-preferred driver will obey traffic laws.  Id.  Thus, a preferred driver is not required to proceed overly cautious into an intersection and be cognizant of everything in plain view.  Id.  Simply put, a driver has no duty to exercise more caution than ordinary because another may break the law and create a dangerous situation.

The undisputed facts establish that Garlach ran through a stop sign, which is a violation of the law.[4]  Garlach has submitted nothing to the contrary to create a genuine issue that she did not run through the stop sign.  Thus, Senters is correct in that he was not required to do anything above his ordinary duty of exercising reasonable care to maintain reasonable control of his vehicle because of Garlach's actions.  He did not need to slow down, stop, swerve, or otherwise act because of Garlach's failure to obey the traffic laws.

However, Senters still had a general duty to maintain reasonable speed of his vehicle, which Garlach contends Senters breached.  Under Indiana Code § 9-21-5-1, "a person may not drive a vehicle on a highway at a speed than is reasonable and prudent under the conditions."

---

[4]Ind. Code 9-21-3-8 indicates that an individual shall stop at a flashing red light such as the one at the intersection of Highways 6 and 421, which Garlach drove through.

8

Therefore, Senters had a duty to maintain a reasonable speed.  Senters indicates that the eyewitnesses of the collision do not believe Senters was speeding.  In order to survive summary judgment, Garlach must come forward with specific evidence that establishes Senters was not driving at a reasonable speed.

Garlach has presented evidence in the form of an expert opinion that Senters was driving faster than the speed limit.  Evidence that Senters was exceeding the speed limit, by as much as 10 m.p.h. as Cooper suggests, is sufficient evidence to lead to a reasonable conclusion that Senters breached his duty to maintain a reasonable speed.[5]  Therefore, Garlach has presented sufficient evidence to create a genuine issue as to whether Senters breached his duty to maintain a reasonable speed of his vehicle under Ind. Code § 9-21-5-1 as required by Celotex.

Garlach has also presented sufficient evidence to create a genuine issue as to causation.  Causation is generally a question of fact for the jury.  Winchell v. Guy, 857 N.E.2d 1024, 1030 (Ind. Ct. App. 2006).  Proximate cause in Indiana has two aspects, causation in fact and the forseeabilty.  City of Gary ex. rel. King v. Smith & Wesson Corp., 801 N.E.2d 1222, 1243 (Ind. 2003). Causation can be a question of law where the facts are undisputed and only a single inference can be drawn from those facts.  City of Indianapolis Hous. Auth. v. Pippin, 726 N.E.2d 341, 347 (Ind. Ct. App. 2000).  But, as this Court has stated, there is a dispute as to the fact of Senter's speed.  Garlach's expert, Cooper, also testified that the accident would not have occurred if Senters would have been traveling slower.  In fact, Cooper opined that Garlach

---

[5].  This Court also notes that as a matter of law it is a violation of Ind. Code §§ 9-21-5-2 and 9-21-5-3 if Senters was going above the speed limit.  Violation of a statutory duty constitutes negligence per se.  St. John Town Bd. V. Lambert, 725 N.E.2d 507, 517 (Ind. Ct. App. 2000).

would have traveled 18 feet further if Senters were going under the speed limit.  As to forseeability, a logical consequence of speeding is a collision with another vehicle.  Again, Garlach has presented sufficient evidence to create an issue of whether Senter's failure to travel slower was a proximate cause of Garlach's injuries.

Finally, Senters argues that even if he was negligent, Garlach was more negligent under the Indiana Comparative Fault Act to warrant summary judgment.  Under the Indiana Comparative Fault Act, any contributory negligence by the plaintiff proportionately reduces any compensatory award.  Ind. Code § 34-51-2-5.  However, a plaintiff is barred from recovery, as a matter of law, if the plaintiff's fault is greater than those who contributed to his damages.  Ind. Code § 34-51-2-6; see also Ind. Code § 34-51-2-7(b)(2); Hopper, 716 N.E.2d at 575.  While fault apportionment is generally a question of fact to be decided by the jury, "at some point the apportionment of fault may become a question of law for the court . . . only when there is no dispute in the evidence and the factfinder is able to come to only one logical conclusion." Robbins v. McCarthy, 581 N.E.2d 929, 934 (Ind. Ct. App. 1991) (emphasis added).  Therefore, if there is no genuine issue of fact that Garlach is more than fifty percent at fault for her own injuries, summary judgment is still appropriate.

The undisputed facts establish that Garlach failed to appropriately follow the traffic laws by stopping at the stop light of the intersection.  Even assuming that Garlach is negligent, there is one crucial fact that is in dispute in the evidence.  The parties dispute the speed at which Senters was traveling.  Depending on how this fact is resolved, several different logical conclusions are possible.  For example, the jury may find that Senter's speed was not reasonable, and a logical conclusion to follow would be that Senters unreasonable speed was a greater contributor to the

10

accident with Garlach.  Or the jury may find that Senters speed was reasonable and that Garlach's negligence was more of a contributing factor.  Simply put, the dispute in the evidence of Senter's speed  leaves the possibility for multiple logical conclusions, which makes summary judgment inappropriate.

In summary, there is a genuine issue of fact as to Senter's speed.  The jury must determine what Senters speed was, whether it was unreasonable, and who between himself and Garlach was more at fault for Garlach's injuries.

### III.  CONCLUSION

For the reasons stated, Senter's motion to strike Cooper's testimony is **DENIED** [Doc. No. 21], and Senter's motion for summary judgment is **DENIED** [Doc. No. 16]

**SO ORDERED.**

Dated this 11th Day of June, 2007.

<u>S/ Christopher A. Nuechterlein</u>
Christopher A. Nuechterlein
United States Magistrate Judge